**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| **SAUL  GARCIA,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Cause No. 1:10-cv-387-WTL-MJD** |
| | ) | **IP 07-CR-12-9-T/F** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

<u>**ENTRY DENYING MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE**</u>
<u>**PURSUANT TO 28 U.S.C. § 2255 AND RELATED MATTERS**</u>

This cause is before the Court on Petitioner Saul Garcia's motion to vacate, set aside or

correct sentence pursuant to 28 U.S.C. § 2255 (dkt. no. 1). This matter is ripe for ruling, and the

Court, being duly advised, **DENIES** the motion for the reasons set forth below. The Court also

**GRANTS IN PART AND DENIES IN PART** Garcia's motion to expand the record (dkt. no

46). The Court further **DENIES** Garcia's request for an evidentiary hearing and finds that a

certificate of appealability should not issue.

## I.      <u>PROCEDURAL HISTORY</u>

Garcia filed his original motion for relief pursuant to 28 U.S.C. § 2255 on April 1, 2010

(dkt. no. 1). Since that date, Garcia has filed a number of other documents that contain arguments

in support of his motion. The following is a list of the documents filed by Garcia and the

Government that the Court has reviewed and considered in ruling on Garcia's motion for relief

pursuant to 28 U.S.C. § 2255:

- Garcia's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. §
  2255 and Memorandum of Law in Support filed on April 1, 2010 ("Garcia's
  Motion") (dkt. no. 1);

- The Government's Response to Motion for Post-Conviction Relief filed on July 14, 2010 ("Government's Response") (dkt. no. 11);

- Garcia's Amended 28 U.S.C. § 2255 filed on September 17, 2010 ("Garcia's Amended Motion") (dkt. no. 19);

- Garcia's Motion to Expand the Record (dkt. no. 34) and Affidavit in Support of Motion Under 28 U.S.C. § 2255 to Vacate Set Aside or Correct Sentence ("Supporting Affidavit") (dkt. no. 34-1) filed on March 19, 2012 (The motion was granted and the Court redocketed the Supporting Affidavit on January 18, 2013 (dkt. nos. 40, 41));

- The Government's Response to Amended 28 U.S.C. § 2255 Motion filed on March 27, 2012 ("Government's Response to Amended Motion") (dkt. no. 36);

- Garcia's Surreply to the Government's Response to Amended 28 U.S.C. § 2255 Motion ("Garcia's Surreply") (dkt. no. 38) and Affidavit in Support of Movant's Surreply to the Government's Response to Amended 28 U.S.C. § 2255 Motion (dkt. no. 39) filed on April 19, 2012,;

- The Government's Supplemental Response filed on February 28, 2013 ("Government's Supplemental Response") (dkt. no. 44); and

- Garcia's Traverse Reply in Opposition to the Relief Requested by the Government in Response to the Movant's Amended § 2255 Motion and Motion to Expand the Record filed on April 2, 2013 ("Traverse Reply") (dkt. no. 46).

## II.   MOTION TO EXPAND THE RECORD

As noted above, Garcia's Traverse Reply includes a motion to expand the record. To the extent Garcia's motion to expand the record moves the Court to consider the facts and information contained in the Traverse Reply in ruling on his request for relief pursuant to § 2255 (which facts and information support the arguments already before the Court), the Court **GRANTS** the motion. However, to the extent Garcia's motion to expand the record moves the Court for an opportunity to add new arguments to his § 2255 motion, the Court **DENIES** the motion.

2

## III.    REQUESTS FOR JUDICIAL NOTICE

Garcia has filed two requests for judicial notice during the pendency of these proceedings. On May 18, 2010, Garcia filed "Defendant's Request for the Court to take 'Judicial Notice' of Adjudicative Facts on the Record to Vacate the 'Judgment and Commitment Order' and its 380 month sentence." (dkt. no. 9). On September 17, 2010, Garcia filed "Petitioner's request for the court to take 'Judicial Notice' of adjudicative facts of ineffective counsel on direct appeal." (dkt. no. 20). The statements contained in the requests, however, are not appropriate for judicial notice pursuant to Federal Rule of Evidence 201(b).[1] Accordingly, the Court declines Garcia's requests for judicial notice.

## IV.    REQUEST FOR EVIDENTIARY HEARING

Garcia requests an evidentiary hearing in the event the Court is "unable to reach a conclusive determination as to the merits of the stated claims for relief." Garcia's Mot. at 2. Because the Court is able to reach a conclusive determination as to the merits of Garcia's motion based on the motion, files, and records for this case, the Court **DENIES** Garcia's request for an evidentiary hearing. *See Bruce v. United States*, 476 F.3d 592,597 (7th Cir. 2001).

## V.    BACKGROUND

On June 20, 2007, a grand jury sitting in the Southern District of Indiana returned a four-count second superseding indictment charging twenty-one individuals with a variety of crimes, including conspiracy to distribute in excess of 500 grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846. *United States v. Garcia*, 580 F.3d 528, 531 (7th Cir. 2009). Garcia was charged in count one of the indictment with being a member of the conspiracy. Garcia was

---

[1]Federal Rule of Evidence 201(b) allows a court to take judicial notice of a fact "that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

initially arrested on January 19, 2007, after a police investigation revealed that Garcia was a low-level methamphetamine dealer in the Indianapolis area. Following Garcia's arrest, police searched Garcia's apartment and found a ledger showing money owed to him for fronted drugs, over $2,000 in cash, and two rifles.

On July 27, 2007, the Government filed an information pursuant to 21 U.S.C. § 851(a)(1) alleging that Garcia was previously convicted of a felony drug offense.[2] As a result, if convicted of the instant offense, Garcia faced a minimum of twenty years in prison.

On September 18, 2007, a jury found Garcia guilty of conspiracy to distribute more than 500 grams of methamphetamine. During the trial, the jury heard from admitted coconspirators Macarmen Espinosa Martinez and Eloy Hernandez a/k/a Jorge Baltista ("Baltista"). Both witnesses testified pursuant to plea agreements with the Government and implicated Garcia in the drug distribution conspiracy. The jury also heard wiretap evidence in which Garcia was intercepted discussing drug transactions.

Garcia was sentenced on December 3, 2007. During the sentencing hearing, one of Garcia's customers, Brian Smith, who testified pursuant to a plea agreement with the Government, told the court that he purchased between two-to-three pounds of methamphetamine a week from Garcia and he saw Garcia with a pistol on two occasions. Smith also testified that on the morning of the hearing, Garcia told him "[t]o not point the finger at him, to blame it on Jorge Baltista," and say that he "obtained the methamphetamine through his girlfriend and Jorge."[3] Sentencing Tr. at 14-15. As a result of Smith's testimony, the court applied enhancements to Garcia's total offense level for possessing a firearm and obstructing justice. The

---

[2]On June 6, 2003, Garcia was convicted of possession of cocaine, a Class D Felony, in the Marion County Superior Court in Indiana.

[3]Garcia and Smith were both in federal custody and were transported to the sentencing hearing in the same vehicle.

court also determined that Garcia was responsible for at least fifteen kilograms of methamphetamine. Based on the foregoing and Garcia's prior felony drug conviction, the court sentenced Garcia to 380 months in prison.

Garcia filed his notice of appeal on December 10, 2007. Shortly thereafter, Garcia's trial counsel was granted leave to withdraw his appearance. Garcia's court-appointed appellate counsel, however, also moved to withdraw after he was "unable to discern a non-frivolous basis for appeal." *Garcia*, 580 F.3d at 543. Garcia's appellate counsel supported his motion to withdraw with a "thorough" and "well-written" brief pursuant to *Anders v. California*, 386 U.S. 738 (1967). *Garcia*, 580 F.3d at 543. The *Anders* brief addressed the court's evidentiary rulings regarding the testimony of Martinez and Baltista, Garcia's multiple requests for a new attorney, the sufficiency of the evidence used to convict Garcia, and various issues regarding Garcia's sentence. *Id*. As a result of his counsel's motion to withdraw, Garcia filed a document entitled "Opening Brief Response to Counsel's Motion to Withdraw from Appeal" with the Seventh Circuit on October 16, 2008. Garcia argued that the evidence was not sufficient to support his conviction, the information filed by the Government pursuant to 21 U.S.C. § 851(a)(1) was not proper, and the court erred in applying the firearm enhancement to Garcia's total offense level.

On September 1, 2009, the Seventh Circuit granted appellate counsel's motion to withdraw and agreed "that there [were] no non-frivolous issues for appeal." *Garcia*, 580 F.3d at 543. As a result, Garcia's appeal was dismissed. Garcia, however, sought further review from the Seventh Circuit. On September 11, 2009, Garcia filed his Petition for Panel Rehearing and Suggestion for Rehearing by the Full Court, *En Banc*, but the Seventh Circuit denied the requests. Thereafter, on November 30, 2009, Garcia filed a Motion to Recall the Mandate, but again, the Seventh Circuit denied the motion.

Garcia instituted the current proceedings on April 2, 2010. However, on September 16, 2011, over a year and a half after he filed his § 2255 motion with this Court and two years after the Seventh Circuit dismissed his appeal, Garcia asked the Seventh Circuit to recall its mandate and reinstate his direct appeal. The Seventh Circuit denied the motion.

## VI.    STANDARD

A motion pursuant to 28 U.S.C. § 2255 is the presumptive means by which a federal prisoner can challenge his conviction or sentence. *See e.g., Davis v. United States*, 417 U.S. 333, 343 (1974). A court may grant relief pursuant to § 2255 if a sentence "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose . . ., or that . . . was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The scope of relief available under § 2255 is narrow and limited to "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991) (internal citations omitted).

## VII.    DISCUSSION

Garcia argues that his sentence is subject to collateral attack for a number of reasons; each argument is addressed below.

### A.  Denial of Garcia's Requests for New Trial Counsel

According to Garcia, he filed three motions to remove his trial counsel; "[t]he first two [were] before Garcia's trial and the third motion was before he was sentenced." Garcia's Surreply at ¶ 5. The record, however, indicates that Garcia asked the court to appoint new counsel on only two occasions. Regardless, Garcia's requests for new trial counsel were addressed in appellate counsel's *Anders* brief and considered by the Seventh Circuit. In its

6

opinion, the Seventh Circuit noted that the court "held ex parte hearings to determine whether the requests should be granted, applied the proper criteria, and did not abuse its discretion in finding that new counsel was inappropriate." *Garcia*, 580 F.3d at 543. As a result, the Court need not reconsider the matter. *See Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995) (noting that the court may exercise its discretion not to reconsider issues already decided on direct appeal).

### B.  Jury Selection

Garcia argues that he does not know how he received his jury, that he "was never called to court to pick a jury," and that the "jury just appeared." Supp. Aff. at ¶ 15. Criminal defendants have a constitutional right to be present during jury selection. *Gomez v. United States*, 490 U.S. 858, 873 (1989). According to Garcia's trial counsel, however, Garcia "was present in Court during voir dire, and an interpreter was present in Court translating for the three (3) defendants during the voir dire process." Government's Supplemental Resp. at Exh. A, p. 1. Further, although Garcia's presence during voir dire was not specifically noted on the record, the court indirectly acknowledged Garcia's presence during jury selection. In explaining the presence of interpreters to the prospective jurors, the court stated as follows:

> [T]he title of the case is United States of America versus Paula Alvarez, also known as Pavi; Saul Garcia, also known as Aron Garcia; and Martin Alfaro-Castro, three Hispanic-sounding surnames. And, in fact, each of the three persons accused, the three defendants . . .  their native language is Spanish. And so the interpreters are interpreting from English into Spanish, and you'll notice there are three – well, actually, there are two individuals who are accused wearing headsets over their ears, a gentleman here at the first table to my left has headsets on, wearing a dark coat, and then there's a gentleman wearing a headset at the second table right behind that wearing a headset.
>
> Translation is being provided from English into Spanish for those two individuals who are two of the defendants. There's another – there's a young lady at the second table to the left who has a headset around her neck, and that's Miss Alvarez. And from time to time, I suppose she might wear headsets.

7

Voir Dire Tr. at 36-37. Garcia's trial counsel's statement and the foregoing discussion establish that Garcia was present during jury selection. Thus, Garcia's constitutional right to be present during jury selection was not violated.

### C.  Right to Testify

Garcia argues that he "did not knowingly and voluntarily [waive] his right to testify," Garcia's Surreply at 13, and that his counsel and the judge did not let him "testify in front of the jury so that the jury could hear [his] side of the case."[4] Supp. Aff. at ¶ 17. Garcia also argues that counsel did not let him address the court before he was sentenced. Garcia states that he "wanted to object to Champion being forced upon him as his trial attorney and object to not having any witnesses testify including himself." Garcia's Surreply at ¶ 26.

"[A] defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense." *Rock v. Arkansas*, 483 U.S. 44, 50 (1987). "[T]he defendant's waiver of the right [to testify] must be knowing and intelligent." *United States v. Manjarrez*, 258 F.3d 618, 623 (7th Cir. 2001).  However,

> [a] barebones assertion by a defendant [that his counsel forbade him to testify] is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him. . . . Some greater particularity is necessary-and also . . . some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify-to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim.

---

[4] Although Garcia appears to couch his failure to testify as a claim for ineffective assistance of counsel, the Court finds that the argument is better addressed as an alleged violation of Garcia's constitutional right to testify. Nevertheless, the record does not support a finding that Garcia's trial counsel rendered ineffective assistance for failing to allow Garcia to testify. *See Taylor v. United States*, 287 F.3d 658, 662-663 (7th Cir. 2002) (counsel not ineffective where nothing in the record suggested "that counsel's advice not to testify was anything less than the best professional assistance").

*Underwood v. Clark*, 939 F.2d 473, 476 (7th Cir. 1991) (also noting that the defendant need not

have protested his counsel's actions to the judge and the judge is not required to inquire of the

defendant directly whether he wants to testify).

Here, Garcia's trial counsel maintains that

Garcia was in Court at the time of the trial and had an opportunity to testify on his
own behalf if he so desired. He was also present at the time of his sentencing, and
chose not to testify. There is nothing in the record which indicates any effort on
his part to testify on either occasion, or that I advised or prohibited him from
testifying.

Government's Supplemental Resp. at Exh. A, p. 2. The court did, indeed, discuss whether Garcia

intended to testify.

| The Court: | Mr. Champion, I wanted to confirm, you do not have evidence; is that correct? |
|---|---|
| Counsel: | That's correct, Your Honor. |
| The Court: | I take it, Mr. Champion, by the way, that you have discussed with your client that he is not required to testify but has the right to do so if he wants. |
| Counsel: | Yes, Judge, we can put that on the record, if you want. |
| The Court: | At some point we will. Of course I will need interpreters to interpret that.[5] |

Jury Tr. at Vol. VI-1103.

With regard to Garcia's sentencing hearing, the court again notified Garcia of his right to

address the court. After the Government presented its evidence, the court stated:

And, of course, I need to clarify. Your client, Mr. Garcia, has the right of
allocution, as you know. Mr. Garcia should know this too, and I want to make
sure you know this, Mr. Garcia. You have the right to speak as part of the
sentencing hearing to say anything you want to me in hopes of persuading me to
give you a favorable sentence. That statement that you have the opportunity to

---

[5]It does not appear, however, that such a record was made by the court.

make if you wish does not have to be under oath. It does not have to be in the
form of testimony.

Sentencing Tr. at 27. Thereafter, the court asked if Garcia wanted to allocute, but counsel stated
that Garcia did not want to speak. Sentencing Tr. at 44.[6]

Based on the fact that the court informed Garcia of his right to testify during his trial and
at his sentencing hearing, and the lack of substantiation for Garcia's "barebones assertion,"
Garcia fails to show that his right to testify was violated. Further, it is unlikely that Garcia's
proposed testimony that he "was innocent" and that he "did not know those other people except
for [his] family members,"[7] would have outweighed the Government's strong evidence against
him (i.e., the wiretap evidence and the testimony of Martienz and Baltista). *Cf. Ortega v.
O'Leary*, 843 F.2d 258, 262 (7th Cir. 1988) (finding that even if defendant's right to testify was
violated, the error was harmless because the testimony the defendant would have offered was
repetitive of other evidence presented by the defense).  It is also unlikely that Garcia's proposed
testimony at his sentencing hearing—that is, complaints about his counsel's performance—
would have affected the sentence he received. Accordingly, the Court finds that Garcia's right to
testify was not violated.[8]

---

[6]The Court also notes that, despite Garcia's numerous filings with the Seventh Circuit
after his appellate counsel moved to withdraw, and with this Court during the pendency of the
instant motion, Garcia did not argue that his right to testify was violated until September, 2011,
when he filed a motion with the Seventh Circuit asking that court to recall its mandate and
reinstate his direct appeal. By then, Garcia had filed his original § 2255 motion and an amended
§ 2255 motion with this Court. Garcia did not bring this argument to this Court's attention until
March, 2012, when he filed his motion to expand the record and the Supporting Affidavit.

[7]Apparently, one or more of the alleged co-conspirators is a member of Garcia's family.

[8]Garcia also argues that appellate counsel was ineffective for failing to address his right
to testify. Garcia's Surreply at ¶ 30. As noted above, however, Garcia fails to show that his right
to testify was violated. Thus, appellate counsel's performance was neither deficient nor
prejudicial in this respect. *See Hough v. Anderson*, 272 F.3d 878, 898 n. 8 (7th Cir. 2001) ("It is

**D.  Insufficient Evidence**

Garcia argues that "[t]he Government did not have a single shred of evidence on [him], nor did the Government produce [any] evidence that demonstrates Garcia participated in the alleged conspiracy." Garcia's Mot. at 6. The sufficiency of the evidence, however, was addressed by Garcia's appellate counsel in his *Anders* brief and considered by the Seventh Circuit. The Seventh Circuit noted: "Counsel also addresses the sufficiency of the evidence to convict Garcia, but he correctly highlights more than enough evidence from which a reasonable jury could have found Garcia guilty." *Garcia*, 580 F.3d at 543. Because the Seventh Circuit has already considered this issue, the Court need not reexamine the matter. *See Olmstead*, 55 F.3d at 319.

**E.  Ineffective Assistance of Trial Counsel**

Garcia also argues that he received ineffective assistance of counsel from his trial attorney, Larry Champion. As a preliminary matter, "a district court cannot reach the merits of an appealable issue in a § 2255 proceeding unless that issue has been raised in a procedurally appropriate manner." *Theodorou v. United States*, 887 F.2d 1336, 1339 (7th Cir. 1989). However, claims of ineffective assistance of counsel need not be raised on direct appeal and constitute an exception to the general rule of procedural default. *Massaro v. United States*, 538 U.S. 500, 509 (2003). Therefore, Garcia need not have raised the issue of ineffective assistance of counsel prior to the instant motion.

With that said, "[t]he Sixth Amendment entitles criminal defendants to the effective assistance of counsel." *Bobby v. Van Hook*, 558 U.S. 4, 16 (2009) (quotations and citations omitted). "An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v.*

---

not deficient performance to fail to raise an argument with no real chance of success.") (citation omitted).

*Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). With regard to an attorney's performance, "a petitioner must demonstrate that counsel's representation 'fell below an objective standard of reasonableness' . . . [i.e.,] 'reasonableness under prevailing professional norms.'" *Id.* (quoting *Strickland*, 466 U.S. at 688). With respect to the prejudice requirement, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Garcia complains about almost everything his counsel did or did not do during the pre-trial, trial, and sentencing phases. Garcia's specific arguments are discussed below.

### 1.   Failure to Communicate – Language Barrier

Garcia argues that he and his attorney could not communicate because his counsel spoke only English while he spoke only Spanish. Garcia also argues that he made several requests for an interpreter, but his counsel failed to use one during their meetings.

Although Garcia correctly notes that "[c]ounsel's inability to communicate with his client because of a language barrier may render his assistance constitutionally ineffective," *Gallo-Vasquez v. United States*, 402 F.3d 793, 799 (7th Cir. 2005) (citing *Granada v. United States*, 51 F.3d 82, 85 (7th Cir. 1995)), the evidence of record indicates that Garcia was able to communicate with his counsel.[9] First, Garcia's presentence investigation report ("PSR") states that "[t]he defendant speaks English, therefore, an interpreter was not utilized for the interview." PSR, ¶ 62. Second, the record indicates that Garcia's trial counsel did not have trouble

---

[9]The Court does not discount Garcia's argument that he "still has many months before he is able to fluently speak, read, write and understand the English language." Traverse Reply at 2. Rather, the Court focuses only on whether Garcia and his counsel were able to communicate effectively.

communicating with his client. Although Garcia's counsel used an interpreter during their first meeting, counsel "determined that an interpreter was not necessary" for future meetings. Government's Supplemental Resp. at Exh. A, p. 1. Lastly, the following exchange took place at Garcia's sentencing hearing:

| | |
|---|---|
| The Court: | [To Garcia's Counsel] Do you feel you have the ability to discuss matters contained in the pre-sentence report with your client without the aid of an interpreter? |
| Counsel: | Yes, Judge. |
| The Court: | Have you had other communications with him in English throughout the course of your representation? |
| Counsel: | Yes, Judge. |
| The Court: | Mr. Garcia, did you get a chance to go through the pre-sentence report with Mr. Champion? |
| Garcia: | Yes, sir. |
| The Court: | Were you able to understand him as he discussed it with you in English? |
| Garcia: | Yes, sir. |
| The Court: | Are you able to read some English? |
| Garcia: | Yes, sir. |
| The Court: | Were you able to read the pre-sentence report? |
| Garcia: | Yes, sir.[10] |

Sentencing Tr. at 4. Even if the foregoing discussion were interpreted for Garcia, Garcia's answers to the court's questions indicate that he could read and understand some English.[11]

---

[10]Garcia also argues that he was sentenced without "ever seeing or knowing what was in his Presentence Investigation Report." Garcia's Surreply at ¶ 24. The foregoing exchange, however, indicates that Garcia reviewed the PSR with counsel.

13

Based on the foregoing evidence, the Court does not believe the language barrier between Garcia and his counsel created an inability to communicate, such that counsel's performance was constitutionally ineffective.

### 2.   Failure to Communicate – Substance of Case

Garcia also argues that his attorney failed to communicate with him regarding the status and substance of his case. At the same time, however, states that his counsel visited him "almost every week at the detention center." Garcia's Aff. at ¶ 9. Surely Garcia and his counsel discussed the case at some point during those weekly meetings. Further, although Garcia asked the court to appoint new counsel on at least two occasions, the court found that Garcia and his counsel were communicating effectively and denied Garcia's requests. *See, e.g.*, Oct. 24, 2007 Status Conference Tr. at 26.

Even if Garcia were able to show that his trial counsel failed to communicate with him regarding the substance of the case, there is no basis to find that if Garcia's trial counsel had communicated with him more, the outcome of the case would have been different. In this regard, the Seventh Circuit noted there was "more than enough evidence from which a reasonable jury could have found Garcia guilty." *Garcia*, 580 F.3d at 543. Thus, Garcia has not shown the requisite prejudice under *Strickland*.

On a related note, Garcia also maintains that his counsel did not obtain his permission before waiving Garcia's right to an initial appearance and a formal arraignment after superseding

---

[11]Garcia appears to argue that he answered "yes" to the court's questions because his trial counsel stated the following before the hearing: "The judge is going to ask you certain questions and you need to be careful of how you answer them. If you answer them wrong and the Judge gets mad, you'll receive more prison time." Traverse Reply at 4. The Court is not persuaded by Garcia's argument.

indictments were filed. The waivers referenced by Garcia, however, contain his signature.[12]
Thus, Garcia's argument is without merit.

### 3.   Failure to Communicate – Plea Agreement

Garcia argues that counsel never informed him of a plea agreement offered by the
Government. Garcia concedes, however that he "does not even know if AUSA Blackington
offered him a plea," but argues that "the prosecution has a responsibility to offer a plea bargain."
Garcia's Surreply at ¶ 3. Garcia's assumption is incorrect. "[P]lea offers are discretionary and the
[Government] was not required to extend one or keep an offer open." *Williams v. Jones*, 571
F.3d 1086, 1091 (11th Cir. 2009). Further, the record indicates that Garcia's counsel did, in fact,
discuss a potential plea agreement with him. In a letter written by Garcia to AUSA Blackington
dated May 15, 2007, Garcia wrote: "Mr. Blackington, I was just recently told by Mr. Champion,
that you was offering a deal to me, to serve (14) years to talk and (17) years to not talk."[13]
Government's Supplemental Resp. at Exh. A, p. 13. Thus, Garcia's argument that his counsel
failed to present a plea agreement is also without merit.

### 4.   Failure to Investigate

Garcia generally argues that his trial counsel was ineffective because he failed to
investigate, interview witnesses, and research the laws pertaining to his case, but Garcia provides

---

[12]Garcia signed the waivers as "Aron Garcia" and "Aaron Garcia," which are aliases
recognized by the Government. Garcia now concedes that he signed the waivers but argues that
he did not understand what he was signing. As noted above, however, the Court finds that Garcia
could understand some English and that he and counsel could effectively communicate. Thus,
Garcia's argument is not supported by the evidence. Regardless, Garcia did not suffer prejudice
in relation to the waivers because Garcia had an initial appearance and formal arraignment after
the initial indictment, and because the superseding indictments did not alter Garcia's charges.

[13]Upon receipt, AUSA Blackington immediately forwarded the letter to Garcia's counsel.

no support for his argument.[14] Because Garcia has not identified the specific evidence, testimony, or law his counsel failed to discover or investigate, Garcia fails to show that his counsel's performance was deficient or prejudicial.

### 5. *Failure to File Pre-Trial Motions*

Garcia argues that he asked counsel to file "Motions under Giglio and Brady; a [Jencks] Act Motion; a Motion for Discovery and a Motion to Subpoena Witnesses," Supp. Aff. at ¶ 8, but counsel refused to file them. However, Garcia does not provide a factual or legal basis for the motions; he does not state what information he believes should have been produced in response to the motions; and he does not state how the failure to file those motions prejudiced his defense. In short, Garcia's unsupported assertion is insufficient to establish that his counsel's performance was deficient or prejudicial.

### 6. *Rights Under the Vienna Convention*

Garcia also argues that his "[c]ourt appointed counsel failed to inform [him] of the treaties under The Vienna Convention, and the mandatory notification to The Mexican Consular Relation." Garcia's Am. Mot. at 1. "Article 36 of the Vienna Convention provides that when authorities arrest a foreign national he has the right to contact his consulate and that the government must inform the arrestee of that right." *Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009). As an initial matter, it is the Government and not trial counsel who must make certain notifications under the Vienna Convention, *Id*. Therefore, counsel's performance could not be deficient on that basis. Furthermore, to the extent Garcia alleges that trial counsel was ineffective for failing to notify him of the Government's requirements under the Vienna

---

[14]Garcia identifies several witnesses he believes counsel should have called to testify on his behalf. This argument is addressed below.

Convention, Garcia's claim also fails because he does not argue that he suffered prejudice as required by *Strickland*. *See Sandoval*, 574 F.3d at 851.

With that said, any independent claim Garcia may have had in relation to his rights under the Vienna Convention is procedurally defaulted because he failed to raise it at trial or on direct review. *See Breard v. Greene*, 523 U.S. 371, 376 (1998) (finding that Vienna Convention claims are subject to procedural default rules).[15] Accordingly, Garcia's claims under the Vienna Convention are without merit.

### 7. Failure to Object to Government Witnesses

Garcia argues that counsel failed to object to the testimony of the Government's witnesses and specifically, the evidence regarding "trips [i.e., drug runs] from Indiana to Illinois that did not concern [him]." Garcia's Mot. at 7. Garcia does not provide any legitimate legal basis for objecting to the testimony. Further, counsel is not required by *Strickland* to make frivolous objections. *See Hough*, 272 F.3d at 898 n. 8. Thus, Garcia fails to show that his counsel was ineffective for failing to object to the testimony of the Government's witnesses or that he suffered prejudice.

### 8. Failure to Call Witnesses on Garcia's Behalf

Garcia argues that counsel failed to call his former boss as a witness to establish that he earned the cash seized by the Government after his arrest, and failed to call his family members to testify regarding his "good character and demeanor."[16] Garcia's Mot. at p. 5; Supp. Aff. at ¶¶ 14-15. It is true that "[a] failure to investigate known potential alibi witnesses can satisfy the

---

[15]Regardless, it appears the Government provided notice of Garcia's arrest to the Mexican Consulate in Chicago, Illinois on January 22, 2007. Government's Resp. to Am. Mot. at Exh. A.

[16]Garcia notes that counsel attempted to contact the witnesses prior to the sentencing hearing, but "no one answered." Garcia's Surreply at ¶ 21.

'performance prong.'" *Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001). However, "if the potential witnesses are not called, it is incumbent on the petitioner to explain their absence and to demonstrate, with some precision, the content of the testimony they would have given at trial." *U.S. ex rel. Cross v. DeRobertis*, 811 F.2d 1008, 1016 (7th Cir. 1987). Further, "counsel does not render ineffective assistance by failing to pursue arguments that are clearly destined to prove unsuccessful . . . or by strategically choosing to pursue his client's strongest arguments and to forego marginal ones." *United States v. Kamel*, 965 F.2d 484, 498 (7th Cir. 1992).

Garcia argues that the witnesses would have testified that he did not deal drugs and he earned the cash discovered by the police. This type of testimony, however, is tangential to the conspiracy charge and does not refute the direct evidence presented by the Government (e.g., the wire taps and the testimony of Garcia's coconspirators). Because of this, Garcia fails to show the requisite prejudice under *Strickland*. In other words, there is no reason to believe that the witness testimony "if presented at trial, would have led to a different result." *Cross v. O'Leary*, 896 F.2d 1099, 1101 (7th Cir. 1990). Further, there is also no reason to believe that the witness testimony would have affected his sentence. Accordingly, Garcia's trial counsel did not render ineffective assistance in failing to call these witnesses.

### 9.   Failure to Object to Prior Felony Conviction

Garcia argues that counsel was ineffective because he "did not challenge the Government's filing of the § 851 [information]." Garcia's Mot. at 9. Garcia maintains that his prior felony conviction for simple possession in state court "did not qualify as a prong for 21 U.S.C. § 851(a)(1)." Garcia's Mot. at 9. Garcia's understanding of the law, however, is incorrect. Garcia's felony conviction for simple possession in state court can be used to enhance the statutory minimum sentence under 21 U.S.C. § 851. *See United States v. London*, 568 F.3d 553

18

(5th Cir. 2009) (state court simple possession felony conviction triggers enhancement provisions of 21 U.S.C. § 841(b)(1)(B)); *United States v. Brown*, 383 Fed. Appx. 543, 546 (7th Cir. 2010) ("We are not aware of any court holding that a state felony drug conviction for simple possession does not trigger the increased mandatory minimum in 21 U.S.C. § 841(b)(1)(B) because simple possession is not a felony in the federal system."). Accordingly, Garcia's counsel did not render ineffective assistance when he failed to object to the prior felony enhancement under 21 U.S.C. § 851.

    *10. Failure to Object to Testimony of Brian Smith and Obstruction of Justice Enhancement*

        Garcia complains generally about Smith's testimony at the sentencing hearing, contending that his counsel should have objected or caused Smith's testimony to be excluded. Garcia also argues that counsel should have asked the U.S. Marshal who escorted Garcia and Smith to court to testify regarding whether he overheard the conversation that served as the basis for the court's obstruction of justice enhancement.

        The Court is not persuaded that counsel was ineffective in the way he handled Smith's testimony. First, Garcia does not articulate a legitimate basis for objecting to Smith's testimony.[17] Second, what the U.S. Marshal knew or did not know is unknown; he very well could have corroborated Smith's testimony. Thus, Garcia's counsel was not ineffective for failing to call a witness who may or may not have helped Garcia's cause. *Cf. Kamel*, 965 F.2d at 498. Further, to the extent Garcia argues that the obstruction of justice enhancement was

---

    [17]Garcia argues, among other things, that Smith's testimony was a "product of the government." Garcia's Mot. at 11. The Court does not give this argument any weight, however, because there is no corroborating evidence in the record.

improper, the Seventh Circuit has already determined that the court did not err by imposing the enhancement. *Garcia*, 580 F.3d at 543.[18]

### 11. Failure to Object to Firearm Enhancement

Garcia argues that counsel failed to "properly" object to the firearm enhancement. The argument, however, is unavailing. Garcia's counsel filed a sentencing memorandum on November 27, 2008, that included an objection to the firearm enhancement based on the two rifles found by police at Garcia's home after his arrest. Garcia's counsel argued that the firearm enhancement should not be applied because the rifles were unloaded (one was disassembled), there were no drugs found near the guns, and the guns were not the type of guns used in the drug trade.[19] The Court finds that counsel's argument regarding the rifles was well-grounded. *See, e.g.*, *United States v. Perez*, 581 F.3d 539, 546 (7th Cir. 2009).

Nevertheless, the court applied the enhancement based on the rifles and Smith's testimony regarding the pistol. Garcia's counsel addressed Smith's testimony concerning the pistol during the sentencing hearing. He stated:

---

[18]Garcia also argues that appellate counsel prejudiced his defense by allowing "Brian Smith to testify about past dealings with [Garcia], when evidence demonstrates the United States Marshal Service were in violation of law, by allowing both parties . . . to ride together over [to] the Federal Building." Garcia's Mot. at 3. Garcia's appellate counsel, however, summarized Smith's testimony in his *Anders* brief and discussed the appropriateness of the drug quantity attributed to Garcia by the court, the firearm enhancement, and the obstruction of justice enhancement. Appellate counsel also informed the Seventh Circuit that Garcia and Smith were transported to the courthouse together on the morning of the hearing. The Seventh Circuit ultimately determined that "the district court properly calculated the drug quantity for which Garcia was held responsible and did not err by imposing enhancements for possession of a firearm and obstruction of justice." *Garcia*, 580 F.3d at 543. The Court, therefore, finds that Garcia's appellate counsel was also not ineffective in the manner in which he addressed Smith's testimony.

[19]Garcia generally alleges that his counsel failed to "raise a single objection" to the PSR. Garcia's Mot. at 2. The sentencing memorandum, however, includes several objections to matters discussed in his PSR.

> This Derringer that Mr. Smith mentioned in his testimony today, that's the first I've ever heard of that particular weapon or firearm, assuming it was a real firearm, assuming it was not a fake like a pistol he had in his apartment and assuming that it was possessed for protection of drugs or for protection of money for drugs.
>
> Mr. Smith indicated that he did not feel threatened by any Derringer . . . that he says was laying on Mr. Garcia's cabinet or counter in the kitchen, nor was he threatened . . . when Mr. Garcia showed him his gun in his automobile.
>
> And again, you have to believe that Mr. Smith is a credible witness to accept that a Derringer even existed at all, let alone a real Derringer or one that was loaded.

Sentencing Tr. at 34-35. Garcia points to no other argument that counsel should have been made.

Therefore, Garcia fails to show that his counsel's performance was ineffective.

Further, to the extent Garcia argues that the firearm enhancement was improper, the

Seventh Circuit has already determined that the court did not err by imposing the enhancement.

*Garcia*, 580 F.3d at 543.

### 12. Failure to Object to Quantity of Drugs Attributable to Garcia at Sentencing

Garcia argues that counsel failed to object to the amount of drugs attributed to him by the

court for sentencing purposes.[20] However, Garcia does not provide a legitimate basis for

objecting to the court's calculation.[21] Further, Garcia's appellate counsel addressed the quantity

of drugs attributed to Garcia by the court and the court's application of the aggregation rule in

his *Anders* brief. The Seventh Circuit thus determined that "the district court properly calculated

---

[20]It is unclear whether this argument is directed at Garcia's trial counsel or appellate counsel. As a result, the Court will analyze the issue in relation to both attorneys.

[21]Garcia argues that the amount of drugs should have been determined by the jury, Supp. Aff. at ¶ 19, and that the court "credited Garcia with too much methamphetamine under the relevant conduct calculus of the U.S. Sentencing Guidelines Manual." Garcia's Surreply at ¶ 29. These arguments are not supported by the law. *See, e.g.*, *United States v. White*, 519 F.3d 342, 347 (7th Cir. 2008) ("[T]he relevant conduct or 'aggregation rule' grants the government a 'fearsome tool' in drug cases allowing prosecutors to seek enhanced sentences by asking the sentencing court to consider types and quantities of drugs not specified in the counts of conviction.") (citation omitted).

the drug quantity for which Garcia was held responsible." *Garcia*, 580 F.3d at 543. Accordingly, to the extent Garcia argues that the court's findings were improper, the Court need not reconsider the issue. Based on the foregoing, the Court also finds that Garcia's trial counsel and his appellate counsel were not ineffective for failing to challenge the court's application of the aggregation rule.

### F.  Ineffective Assistance of Appellate Counsel

Garcia also argues that appellate counsel was ineffective in a variety of ways. Claims of ineffective assistance of appellate counsel are also subject to the *Strickland* analysis. *Howard v. Gramley,* 225 F.3d 784, 789-90 (7th Cir. Cir. 2000). To prevail on a claim of ineffective assistance of appellate counsel, the petitioner must show that appellate counsel's performance was "unreasonably deficient" and that this inadequacy resulted in prejudice. *Id.* at 790. On the deficiency prong, the petitioner must show that counsel failed to present a significant and obvious issue on appeal. *See Smith v. Robbins,* 528 U.S. 259, 288 (2000). Counsel, however, "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Id.* Where appellate counsel has presented some arguments on appeal but not others, it will be difficult to demonstrate that counsel was incompetent. *See id.* As to the prejudice prong, the petitioner must show "there is a reasonable probability that his case would have been remanded for a new trial or that the decision of the . . . trial court would have been otherwise modified on appeal" if the claim had been presented to the appellate court. *Howard,* 225 F.3d at 789-90.

#### 1.  Failure to Challenge the PSR

Garcia argues that appellate counsel did not "raise a single objection to the Presentencing Report." Garcia's Mot. at 2. Yet Garcia does not state with any particularity what challenges to

the PSR he believes were appropriate. Regardless, Garcia's appellate counsel discussed several matters in his *Anders* brief that were included in the PSR (e.g., the firearm enhancement and the amount of drugs attributable to Garcia). Based on the foregoing, Garcia fails to show that his appellate counsel rendered ineffective assistance in his treatment of the PSR.

### 2. *Failure to Research the Law and Raise Obvious Issues*

Garcia argues generally that appellate counsel "failed in every aspect to research the law and raise issues which were obvious on the record and must have leaped out upon even a casual reading of the transcript." Garcia's Mot. at 3. Garcia's argument, however, is unsupported by the record. In fact, the Seventh Circuit stated that appellate counsel's *Anders* brief was "thorough," "well-written," and "facially adequate." *Garcia*, 580 F.3d at 543. Further, Garcia does not identify a significant and obvious issue that appellate counsel should have addressed in the direct appeal. Accordingly, Garcia fails to show that appellate counsel's performance was constitutionally deficient.

### 3. *Failure to Advise Garcia of Appellate Rights*

Garcia argues that appellate counsel "never informed [him] of his appeal rights to the Supreme Court, therefore causing [him] to lose his constitutional right to file a Writ of Certiorari." Garcia's Surreply at ¶ 31. First, Garcia's argument fails because there is no Sixth Amendment right to counsel on pursuit of a discretionary appeal. *See Ross v. Moffitt*, 417 U.S. 600, 610-11 (1974); *Buelow v. Dickey*, 847 F.2d 420, 426 (7th Cir. 1988) ("There is no right to competent counsel in a discretionary appeal."). "Review on a writ of certiorari is not a matter of right, but of judicial discretion." U.S. Sup. Ct. R. 10. Second, Garcia's appellate counsel followed the requirements for withdrawal outlined in Circuit Rule 51(b).[22] The Seventh Circuit

---

[22]Circuit Rule 51(b) states:

granted the motion to withdraw at the same time it dismissed Garcia's appeal. Therefore, when the Seventh Circuit issued its decision, Garcia's appellate counsel was no longer "appointed counsel" such that he was required to notify Garcia in writing of his right to seek review from the Supreme Court of the United States. *See* Seventh Circuit Plan, V. 3. The Court knows of no rule or law suggesting otherwise. Accordingly, Garcia fails to show he received ineffective assistance of appellate counsel.

### G. Sentencing Calculation

Finally, to the extent Garcia is challenging his sentencing calculation, the Court finds his argument unavailing. As noted throughout this Entry, the Seventh Circuit considered "multiple issues regarding Garcia's sentence" and determined that "the district court properly calculated the drug quantity for which Garcia was held responsible and did not err by imposing enhancements for possession of a firearm and obstruction of justice." *Garcia*, 580 F.3d at 543. Accordingly, the Court need not reconsider the issue. *See Olmstead*, 55 F.3d at 319.

### VIII.  <u>CONCLUSION</u>

For the foregoing reasons, Garcia's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 is **DENIED**.

### IX.    <u>CERTIFICATE OF APPEALABILITY</u>

Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2255 proceedings, and 28 U.S.C. § 2253(c), the Court finds that Garcia has failed to

---

When representing a convicted person in a proceeding to review the conviction, court-appointed counsel who files a brief characterizing an appeal as frivolous and moves to withdraw . . . shall file with the brief a proof of service which also indicates the current address of the client. . . . [T]he Clerk shall then send to the client by certified mail, return receipt requested, a copy of the brief and motion, with a notice.

show that (1) reasonable jurists would find this Court's "assessment of the constitutional claims

debatable or wrong," or (2) reasonable jurists would find "it debatable whether the petition states

a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was

correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). The Court

therefore **DENIES** a certificate of appealability.

SO ORDERED: 04/19/2013

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

**Copy by U.S. Mail to:**

**Saul Garcia**
**08456-028**
**Leavenworth U.S. Penitentiary**
**Inmate Mail/Parcels**
**P.O. Box 1000**
**Leavenworth, KS 66048**

Copies to all counsel of record via electronic communication.

25